IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY HOUSTON,<br><br>    Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security<br>Administration*<br><br>    Defendant<br>_____/ | No. C-05-4644 MMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR REMAND; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Plaintiff Randy Houston ("Houston") brings the above entitled action pursuant to 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying Houston's claim for supplemental security income ("SSI") benefits under the Social Security Act. Before the Court are Houston's motion for summary judgment or remand and the Commissioner's cross-motion for summary judgment. Pursuant to Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having considered the parties' submissions in support of an in opposition to the motions, the Court rules as follows.

---

*Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart. See Fed. R. Civ. P. 25(d)(1).

**BACKGROUND**

Houston was born on May 28, 1961. (See Certified Transcript of Administrative Proceedings ("Tr") at 98.) On September 20, 2002, Houston filed an application for SSI benefits, alleging an inability to work as of December 31, 1990. (See Tr. at 98.) On December 19, 2002, the Social Security Administration ("SSA") denied his application, (see Tr. 50-53), and, on August 23, 2003, denied his request for reconsideration, (see Tr. 55-58). Houston then requested a hearing before an administrative law judge ("ALJ"). (See Tr. 59.) A hearing before an ALJ was conducted on December 7, 2004, at which time Houston was represented by counsel and testified. (See Tr. 25.) Additionally, S. Melvin Dorinson, M.D. ("Dr. Dorinson"), testified as a medical expert. (See id.)

On June 15, 2005, the ALJ issued a decision analyzing Houston's claim under the five-step sequential evaluation process set forth in the Code of Federal Regulations,[1] finding as follows: (1) Houston has not engaged in substantial gainful activity as of December 31, 1990 (see Tr. 26-27); (2) Houston has a "severe" impairment, specifically, "borderline intellectual functioning," (see Tr. 27); (3) Houston's impairments, singly or in combination, do not meet or equal an impairment listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App.1 (see id.); and (4) Houston has the residual functional capacity to perform his past relevant work as a janitor and as an asbestos removal worker, (see Tr. 33). Accordingly, the claim was denied at the fourth step.

---

[1] "The Commissioner follows a five-step sequential evaluation process in assessing whether a claimant is disabled.
  Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
  Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
  Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
  Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled."
McCartey v. Massanari, 298 F.3d 1072 n. 6 (9th Cir. 2002).

1  On October 26, 2005, the Appeals Council denied Houston's request for review of
2  the ALJ's decision. (Tr. 7.) Thereafter, Houston commenced the instant action.

## STANDARD OF REVIEW

The Commissioner's determination to deny disability benefits will not be disturbed if it is supported by substantial evidence and based on the application of correct legal standards. See Reddick v. Charter, 157 F. 3d 715, 720 (9th Cir. 1998). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F. 3d 1015, 1039 (9th Cir. 1995). The reviewing court must consider the administrative record as a whole, and weigh both the evidence supporting and detracting from the ALJ's decision. See id. If the evidence is susceptible of more than one rational interpretation, the reviewing court will uphold the decision of the ALJ. See id.

## DISCUSSION

Houston argues the ALJ erred at step three of the five-step analysis.

A claimant is considered disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). At step three, the ALJ determines whether the claimant has a "listed" impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). When "a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed disabled." See Ramirez v. Shalala, 8 F. 3d 1449, 1452 (9th Cir. 1993) (internal citation omitted).

Here, the listing on which Houston relies is Listing 12.05(C). See 20 C.F.R. Pt. 404, Subpt. P, App. 1. Under Listing 12.05(C) a claimant is disabled if he has "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." See 20 C.F.R.

Pt. 404, Subpt. P, App. 1.  The ALJ found that Houston's impairments were not severe enough to meet or equal any listed impairment.

**A.  First Prong of 12.05(C)**

In finding Houston did not meet Listing 12.05(C) the ALJ did not expressly address whether Houston met the first prong of the listing, which, as noted, is that the claimant has a "valid verbal, performance, or full scale IQ of 60 through 70."  See 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Houston argues he established such prong as a matter of law.

The record includes two sets of IQ test findings.  The first was performed in March 2000 by Stephen Singley, M.A. ("Singley"), a clinical psychologist, who reported Houston has a verbal IQ of 73, a performance IQ of 72, and a full scale IQ of 70.  (See Tr. 219.)  The second test was performed in January 2005 by Laurie Weiss, Ph.D. ("Dr. Weiss"), who reported Houston has a verbal IQ of 74, a performance IQ of 68, and a full scale IQ of 69.  (See Tr. 309.)[2]

"In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided," the SSA "use[s] the lowest of these in conjunction with 12.05."  See 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 12.00(D)(6)(c).  Here, as noted, in both sets of IQ tests, Houston's "full scale" IQ fell within the required range, and, in the later set of tests, his "performance IQ" also fell within the required range.  The Commissioner does not point to any other test result that shows Houston's lowest IQ score is not within the required range.  Consequently, there is no conflict in the record on this issue.

Accordingly, it is undisputed that Houston meets the first prong of Listing 12.05(C).

**B.  Second Prong of 12.05(C)**

Once a claimant satisfies the first prong of 12.05(C), "the determinative issue is whether [the claimant] suffers from a physical or other mental impairment which imposes

---

[2] After the hearing, Dr. Weiss conducted a psychological evaluation of Houston at the ALJ's request.  (See Tr. 330.)

4

1 an additional work-related limitation of function, in satisfaction of the second prong of
2 section 12.05(C)." See Fanning v. Bowen, 827 F. 2d 631, 633 (9th Cir. 1986).  An
3 impairment imposes an "additional and significant work-related limitation of function" when
4 its "effect on a claimant's ability to perform basic work activities is more than slight or
5 minimal."  See id.  Here, Houston asserts he has a back impairment or an "other" mental
6 impairment, specifically, an adjustment disorder.  Houston argues that the ALJ erred in
7 finding that neither additional impairment imposes the requisite additional limitation on his
8 ability to perform work functions.

**1.  Back Impairment**

The record includes evidence from treating, examining, and consulting physicians, some of whom provided opinions restricting Houston from certain work activities as a result of Houston's reported back pain.  Houston argues that such opinions support a finding that his back pain imposes an additional and signification limitation on his ability to work, and that the ALJ erred in not adopting the functional limitations set forth in such opinions.

Specifically, Houston relies on the following opinions regarding functional limitations:

(1) a November 25, 1991 report by Jonathan Francis, M.D. ("Dr. Francis"), who opined that, in light of a 1990 auto accident in which Houston "sprain[ed]" his "lumbosacral spine" and Houston's having reported "constant light to moderate pain" as a result thereof, Houston had "lost approximately half of preinjury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort," (see Tr. 212, 214);

(2) an April 2000 report by Claude H. Koons, M.D. ("Dr. Koons"), who reviewed Houston's records and determined Houston had "chronic back strain" in light of Houston's reporting he had "constant" low back pain, "aggravated by any movement and cold weather," that "radiates down his legs which get weak and occasionally give out," (see Tr. 234), and who, in an accompanying form, checked boxes thereon to indicate Houston could occasionally lift no more than 20 pounds and frequently lift no more than 10 pounds, must

1  periodically alter sitting and standing positions to relieve pain, and could occasionally climb,
2  balance, stoop, kneel, crouch, and crawl, (see Tr. 239-40);

3  (3) an August 2000 report by Rodney Carlson, M.D. ("Dr. Carlson"), who stated he
4  had reviewed the records considered by Dr. Koons, as well as "new evidence received,"[3]
5  and that he "affirmed" the assessment made by Dr. Koons, (see Tr. 246);

6  (4) a report dated July 7, 2003, in which Peter Biale, M.D. opined that Houston,
7  during a June 2003 examination, exhibited "[l]imitation of the lumbosacral spine,"
8  specifically, his range of motion was "flexion: 20 degrees, extension: 5 degrees, [and]
9  lateral flexion: right and left 10 degrees," and, consequently, Houston was exertionally
10 limited, specifically, in an 8-hour work day, he could sit less than 6 hours, could stand and
11 walk less than 2 hours, could not lift over 10 pounds, could engage in limited pushing,
12 pulling, climbing and balancing, and could never stoop, kneel, crouch, or crawl, (see Tr.
13 285-88);

14 (5) a "medical assessment" form completed in April 2004 by an Eastmont Wellness
15 Center physician,[4] in which boxes were checked to indicate Houston had "pain, muscle
16 spasm" and "appropriate radicular distribution of sensory and reflex loss," and, as a result,
17 Houston should avoid lifting, prolonged standing or walking for more than 30 minutes in an
18 8-hour work day, and prolonged sitting for more than 30 minutes in an 8-hour work day,
19 (see Tr. 295); and

20 (6) an October 3, 2004 report by Richard Thunder, M.D. ("Dr. Thunder"), in which Dr.
21 Thunder diagnosed Houston with "mechanical low back pain" with a "possible radicular
22 component," and stated that Houston was limited to carrying 50 pounds occasionally and
23 25 pounds frequently, to sitting at two-hour intervals with ten-minute breaks for a total of
24 eight hours, to standing and walking at least six hours a day in limited intervals, and to

---

[3]Dr. Carlson did not identify the nature of the "new evidence."

[4]The name of the physician who signed the report is illegible.  (See Tr. 295.)

limited climbing, balancing, kneeling, crouching, crawling, pushing, and pulling,[5] (see Tr. 303).[6]

The ALJ rejected such opinions on the ground that the "majority of orthopedic 'findings' and subsequent 'functional restrictions' in the record [were] based almost exclusively on [Houston's] subjective complaints," and that Houston was not credible. (See Tr. 32.) As the ALJ put it, "Based on [Houston's] lack of credibility in combination with the paucity of objective findings relating to orthopedic pathology, I do not find any consistent or verified orthopedic or neurological pathology or dysfunction which would significantly restrict his ability to perform basic work with activity. I also do not find any other physical impairment of significance. . . . In essence, therefore, I find that [Houston] has an essentially normal physical exertional residual functional capacity." (See Tr. 32.)

Although Houston argues the ALJ had no legitimate basis to reject the opinions of such physicians, Houston does not expressly argue that the ALJ erred in determining

---

[5] Houston asserts that Dr. Dorinson, who testified as a medical expert at the hearing, agreed with Dr. Thunder's opinion as to functional limitations. The ALJ did not interpret Dr. Dorinson's testimony in such a manner, and Houston fails to show the ALJ's interpretation of Dr. Dorinson's testimony was erroneous. Indeed, in the passage on which Houston relies, Dr. Dorinson appears to be endeavoring to explain why Dr. Thunder might have found any functional limitations in light of Dr. Thunder's observation, discussed infra, that Houston engaged in "amplification" of his symptoms and falsely claimed certain types of pain, as opposed to agreeing with Dr. Thunder's opinion as to the presence of limitations. (See Tr. 357-58.)

[6] Additionally, Houston relies on statements by other medical personnel, although such personnel did not provide opinions as to functional limitations, specifically: (1) medical notes from a "Dr. Madson," which state that Houston, on various dates between December 1999 and March 2000, complained of "chronic low back pain," (see Tr. 249, 251-53); (2) medical notes from Ronny Kafiluddi, M.D. ("Dr. Kafiluddi"), which state that Houston, on various dates between March 2000 and September 2000, complained of lower back pain, including a claim on one occasion that his pain was a "12" on a scale of 1-10, (see Tr. 261-71); (3) clinical notes of Joseph J. Chen, M.D. ("Dr. Chen"), which indicate that Houston, in April 2001, reported his pain as "a constant, aching and burning type of pain that is rated as 10/10," (see Tr. 255); (4) August 2002 notes from physicians in the emergency room of the Genesis Medical Center, specifically, Scott C. Ludwig, M.D., who stated Houston had complained of "chronic recurrent back pain," (see Tr. 258) and a "Dr. Remmes," who provided a "diagnostic impression" of "chronic low back pain," (see Tr. 260); and (6) notes of Lisa Nelson, a certified physician's assistant, which state Houston reported in August 2002 that he has "excruciating back pain nearly all the time," (see Tr. 275), and, in September 2002, that "his left leg is paralyzed if he moves too much and he just has to sit still for a period of time until movement comes back," (see Tr. 273).

Houston was not credible. Nevertheless, given that Houston's argument implicitly challenges such finding, the Court considers whether the ALJ properly found Houston lacked credibility.

An ALJ is "free to disregard" a medical opinion based on a claimant's "subjective complaints" where the claimant is not credible. See Tonapetyan v. Halter, 242 F. 3d 1144, 1149 (9th Cir. 2001). In rejecting a claimant's statements as not credible, however, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." See Thomas v. Barnhart, 278 F. 3d 947, 958 (9th Cir. 2002). In determining a claimant's credibility, "the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." See Light v. Social Sec. Admin., 119 F. 3d 789, 792 (9th Cir. 1997).

Here, the ALJ found Houston was not credible because, on a number of occasions, Houston had exaggerated his pain symptoms to physicians. (See Tr. 32.) This finding is supported by substantial evidence. Specifically, (1) in 2000, Dr. Kadiluddi found Houston had "all Waddell signs that are positive . . . and specific for malingering,"[7] (see Tr. 263), observed that Houston, although claiming pain at a level of "10 on a 10-point scale," was able to "move[ ] easily from chair to bed," (see Tr. 267), and opined that Houston acted in a manner "which typically [was] not a classical radicular pattern," (see id.), (2) in 2001, Dr. Chen found Houston "exhibit[ed] dramatic pain behavior," yet "declined" to see a physical therapist or undergo a "functional activity evaluation," and had engaged in "overreaction" during the examination, (see Tr. 255-26), and (3) in 2004, Dr. Thunder found "[Houston's]

---

[7] At the hearing, Dr. Dorinson testified that "Waddell" signs refer to "non-organic findings." (See Tr. 357.) As Dr. Dorinson explained, "In other words, it's exaggerated pain . . . and not due to any underlying organic problem." (See id.) For example, "If you ask him to turn without moving his back, in other words just rotating shoulders, he would complain of back pain." (See id.)

1 response during the exam [was] quite out of proportion to the other aspects of the physical
2 exam," that "there appear[ed] to be some amplification," and that Houston claimed "pain
3 with false axial rotation, pain with false axial compression as well as hypersensitiv[ity] to
4 light touch on the skin of his back and pain out of proportion to stimulus," (see Tr. 303).

5       Additionally, the ALJ found Houston was not credible because he had made
6 inconsistent statements about his "post onset earnings." (See Tr. 32.) This finding likewise
7 is supported by substantial evidence. At the hearing, Houston asserted that when he
8 worked as a janitorial supervisor in 1999 and 2000, he had only received rent reduction as
9 compensation, although he had earlier signed an SSA application stating he had received
10 $10 per hour for such work. (See Tr. 115, 328-39.) SSA work history records supported
11 the truth of the earlier-made statement, because they show Houston received $432 in
12 income in 1999 and over $2230 in 2000. (See Tr. 101, 328.)

13       Because the ALJ identified specific and legitimate reasons for finding Houston not
14 credible, and such reasons are supported by substantial evidence, the Court finds the ALJ
15 did not err in his assessment that Houston was not credible.

16       As set forth above, the ALJ stated that the "majority" of medical opinions on which
17 Houston relied were based on Houston's subjective complaints, which could suggest the
18 ALJ was of the view that a "minority" of opinions setting forth functional limitations were
19 based on something other than Houston's subjective complaints. As noted, however, the
20 ALJ found there was a "paucity of objective findings relating to orthopedic pathology." (See
21 Tr. 32.) Such finding was supported by substantial evidence presented at the hearing,
22 specifically, the hearing testimony of Dr. Dorinson that the record did not contain such
23 evidence, (see Tr. 358), which finding was, in turn, supported by substantial evidence in the
24 record, specifically, (1) Dr. Francis's opinion that Houston's 1991 MRI showed "no
25 abnormalities" and that a "thermography" was "normal," (see Tr. 212); (2) Dr. Madson's
26 opinion that Houston had "no neurologic deficits," (see Tr. 249); (3) Dr. Kafiluddi's opinion
27 that the results of an MRI and a "5-view series of the lumbar spine" were "normal," (see Tr.
28

263); (4) Dr. Chen's finding that there was "no definite evidence of any structural etiology for [Houston's] pain," that Houston's x-rays were "unremarkable," and that both the x-rays and an MRI showed "well-hydrated" discs, (see Tr. 256-57); and (5) Dr. Remmers's finding that there was "no evidence of abnormalities along the spine," (see Tr. 260). Further, none of the opinions setting forth limitations identify any objective evidence, except to the extent one might characterize a physician's impression of Houston's responses to exercises, such as Houston's attempting to lean forward, as objective in nature. (See, e.g., Tr. 303 (Dr. Thunder opining that Houston "forward flexes to 10 degrees, limited by pain").)[8]

In his reply, Houston relies on notes prepared by Stefan Haller, M.D. ("Dr. Haller"), in which Dr. Haller interpreted the results of an MRI conducted on February 14, 2005, (see Tr. 315-17), and in which Dr. Haller noted an "abnormal signal . . . within the annulus fibrosus at L5-S1, focally in midline consistent with an annular tear," (see Tr. 315). Although Houston's counsel states "[a]n annular tear is certainly capable of producing back pain," (see Pl.'s Reply at 8:12), Houston fails to offer any evidence that the MRI revealed a condition that causes pain, let alone pain that would interfere with Houston's ability to work. As the ALJ noted in quoting Dr. Haller's opinion, (see Tr. 30), the "abnormal signal" revealed "a very minimal if any focal bulge," (see Tr. 315) i.e., that the condition, if it existed at all, was of the smallest degree detectable.[9] Indeed, it is Dr. Haller's opinion that the MRI reflected "no significant protrusion," "no significant indentation" and "no impingement." (See Tr. 316.) Further, with the exception of said "very minimal if any" finding, Houston's spine was "normal" and "unremarkable." (See Tr. 315).

---

[8] As discussed above, three physicians who examined Houston during different years found that Houston had engaged in, respectively, "malingering," "overreaction," and "amplification" during physical examinations in which Houston was asked to perform various tasks, such as lifting and straightening his legs. Under such circumstances, and in light of Houston's general lack of credibility, the ALJ did not err to the extent the ALJ was unpersuaded by opinions that were based on impressions formed after observing Houston attempt to perform such tasks as leaning forward or lifting his legs.

[9] Of course, in the future, should any such "focal bulge" increase in size or significance, Houston may reapply for benefits.

Accordingly, Houston has not shown the ALJ erred in finding Houston's asserted back impairment did not impose a significant work-related limitation of function.

### 2. Adjustment Disorder

As discussed above, Houston can establish the second prong of Listing 12.05(C) if he has an "other" mental impairment that imposes a "significant work-related limitation of function," in addition to the limitations imposed by his low IQ scores. See 20 C.F.R. Pt. 404, Subpt. P, App. 1. In that respect, Houston asserts he has an "adjustment disorder" that constitutes the requisite "other" mental impairment, and that the ALJ erred in finding Houston was not restricted from work functions by any mental impairment other than the restrictions imposed by Houston's "borderline intellectual functioning." (See Tr. 32.)

Houston relies on the opinion of Dr. Weiss, who, as noted, examined Houston on January 25, 2005. In her report, Dr. Weiss offered two "diagnostic impressions," one of which was "borderline intellectual functioning," which diagnosis was based, at least in part, on Houston's low IQ scores, (see Tr. 309-10); the second stated "impression" was "adjustment disorder with depressed mood," (see Tr. 310). Attached to the report is a form completed by Jacklyn Chandler ("Chandler"), a Psychological Assistant,[10] who offered the opinion therein that Houston has a "marked" restriction in his ability to "understand and remember detailed instructions" and to "carry out detailed instructions," and has a "moderate" restriction in his ability to "respond appropriately to work pressures in a usual work setting" and to "respond appropriately to changes in a routine work setting." (See Tr. 311-12.)

Although neither the report nor the attached form indicates whether the claimed restrictions were the result of Houston's asserted "adjustment disorder with depressed mood," the ALJ interpreted the report and/or form as stating that the "moderate" restrictions on Houston's ability to respond appropriately to "work pressures" and "changes in a routine

---

[10]Chandler, along with Dr. Weiss, signed the report, which identifies Chandler as having performed the examination. The ALJ treated the report and the attached form as containing the opinions of Dr. Weiss, as do the parties in the instant briefing.

11

work setting" were the result of said impairment. The ALJ, however, declined to find that Houston was, in fact, restricted in such a manner, because the ALJ did not adopt Dr. Weiss's "diagnosis impression" of "adjustment disorder with depressed mood." Rather, the ALJ agreed with the opinion provided by examining clinical psychologist Singley, who diagnosed Houston with "borderline mental retardation," but not with any other mental impairment. (See Tr. 217-20.)

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F. 3d 1211, 1216 (9th Cir. 2005). Here, the ALJ rejected Dr. Weiss's opinion concerning additional restrictions in light of an asserted adjustment disorder in favor of Singley's opinion for two reasons: "[G]iven [Houston's] complete lack of credibility, in combination with the complete absence of any psychiatric history or treatment therefore, I reject [the opinion]." (See Tr. 32.)

As discussed above, the ALJ's finding that Houston was not credible is supported by substantial evidence. Further, Houston's lack of credibiilty is, under the circumstances, an adequate basis for rejecting the opinion that Houston has an "adjustment disorder with depressed mood," given that Dr. Weiss's report indicates said opinion is based on Houston's self-reporting: "[Houston] presented today as depressed. He reported symptoms of depression that have occurred after a motor vehicle accident in 1990, limiting his ability to work." (See Tr. 310.) Moreover, the other cited reason, specifically, Houston's lack of treatment for such asserted impairment, is adequately supported; the record is devoid of any evidence Houston sought treatment for an adjustment disorder or symptoms thereof. The lack of such treatment, particularly given Houston's contention that the precipitating event occurred approximately fifteen years before the hearing conducted by the ALJ, is a legitimate basis to reject the subject opinion. See Flaten v. Secretary of Health & Human Services, 44 F. 3d 1453, 1464 (9th Cir. 1995) (holding ALJ did not err in discounting claimant's allegation of disabling back pain because "ALJ was entitled to draw

an inference from the general lack of medical care for back problems during the intervening years between two surgeries").

Houston argues the ALJ rejected the subject opinion by Dr. Weiss for a third reason that, according to Houston, is not legitimate. Specifically, Houston relies on the following sentence in the ALJ's decision: "Dr. Weiss herself stated that she did not have any access to any of [Houston's] medical records." (See Tr. 32.) Houston interprets such statement as the ALJ's having rejected Dr. Weiss's opinion because she did not have Houston's medical records, and argues such reason is insufficient because the ALJ could have provided Dr. Weiss with such records. The Court, however, does not interpret the statement in the manner suggested by Houston. Rather, given that the statement was made immediately after the ALJ stated he was rejecting the opinion because of Houston's "complete lack of credibility," and given the content of Dr. Weiss's report, it is apparent the ALJ was simply commenting on the fact that the opinion was based on Houston's subjective statements, as opposed to being based on information provided by other physicians.

Accordingly, the Court finds Houston has not shown the ALJ erred in determining Houston does not have a mental impairment, other than his borderline intellectual functioning based on low IQ tests, that imposes significant limitations on his ability to work.

## CONCLUSION

For the reasons stated above,

1. Houston's motion for summary judgment or remand is hereby DENIED; and

2. The Commissioner's motion for summary judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated: August 17, 2007

MAXINE M. CHESNEY
United States District Judge

13